UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | 2:10-cr-17-JMS-CMM |
| | ) | |
| | ) | |
| JESUS URIBE, | ) | |
|     *Defendant*. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

Presently before the Court is Defendant Jesus Uribe's Motion to Suppress. [Dkt. 36.] Mr. Uribe asks the Court to suppress evidence obtained after an allegedly unlawful traffic stop, asserting that there was neither probable cause nor reasonable suspicion to stop the vehicle he was driving. The Government opposes Mr. Uribe's Motion, arguing that he has not established standing to assert a Fourth Amendment challenge and that the stop was reasonable and justified. [Dkt. 40 at 5-6.]

### I. BACKGROUND

On July 14, 2010, Putnam County Sheriff Deputy Simmons was working traffic enforcement. [Dkt. 37-1 at 1.] At approximately 2:20 a.m., Deputy Simmons was traveling eastbound on Interstate 70 behind a blue Nissan Altima bearing Utah license plate A831GA. [Dkt. 40 at 1.] Deputy Simmons performed a Bureau of Motor Vehicles ("BMV") registration inquiry on the license plate and received return information for a white 2002 Nissan. [Dkt. 37-1 at 1.] Deputy Simmons "initiated an enforcement stop of the vehicle . . . to check for registration compliance." [Dkt. 37-1 at 1.]

There is no evidence or contention that Mr. Uribe committed any moving violation before the stop. After the stop, and further interaction between Mr. Uribe and law enforcement, heroin was found in the vehicle. [Dkt. 37 at 2.]

The United States has charged Mr. Uribe with possession with intent to distribute heroin. [Dkt. 6.] Mr. Uribe challenges the constitutionality of the initial traffic stop that led to the discovery of illegal drugs in the car and seeks to suppress the heroin. [Dkt. 36.]

### III. DISCUSSION

#### A. Mr. Uribe's Standing to Challenge the Search

Before the Court can consider the merits of Mr. Uribe's Fourth Amendment challenge, the Court must address the Government's main argument in response to Mr. Uribe's motion. The Government asserts that Mr. Uribe allegedly lacks standing to challenge the search of the car he was driving because he was not the registered owner. Specifically, the Government asserts that Mr. Uribe lacks standing to challenge the officer's search of the car because he lacked a "legitimate expectation of privacy." [Dkt. 40 at 6.]

In response, Mr. Uribe emphasizes that his motion focuses on the legality of the initial stop and seizure, not on the subsequent search of the car. [Dkt. 41 at 2.] Mr. Uribe contends that if he does not have standing to challenge his own seizure, then all Fourth Amendment protections are illusory. [Dkt. 41 at 2.]

In Fourth Amendment terms, a traffic stop entails a seizure of the driver "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Any seized person – even a mere passenger – is entitled to challenge the Government's action when an officer, by physical force or a show of authority, terminates or restrains a person's freedom of movement. *Brendlin v. California*, 551 U.S. 249, 254 (2007).

The undisputed facts as presented show that Deputy Simmons temporarily detained Mr. Uribe while he was driving a vehicle. [Dkt. 37-1.] The Court concludes that Mr. Uribe has standing to challenge the legality of that detention.

### B. Legality of Stop of Vehicle

Mr. Uribe argues that the inconsistency between the color of the car he was driving and the color of the car listed on the computer registration inquiry Deputy Simmons conducted does not violate any laws and cannot create probable cause or reasonable suspicion to justify a traffic enforcement stop.[1] [Dkt. 37 at 4.] The Government maintains that Deputy Simmons was justified in stopping Mr. Uribe because the car he was driving was allegedly improperly registered and that the color discrepancy supported concern about possible auto theft or improper registration. [Dkt. 40.]

#### 1. Probable Cause

A roadside traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment, which prohibits unreasonable "searches and seizures." *Elliott v. Sheriff of Rush Co.*, 686 F. Supp. 2d 840, 853 (S.D. Ind. 2010). Police can stop an automobile when they have probable cause to believe that the driver violated even a minor traffic law. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). Probable cause exists when an officer reasonably believes that a driver committed a traffic offense. *McDonald*, 453 F.3d at 960. A police officer's mistake of law, however, cannot support probable cause to conduct a stop because an officer cannot have a reasonable belief that a violation of the law occurred when the acts the officer cites to support probable cause are not prohibited by law. *Id.* at 961.

---

[1] Mr. Uribe concedes that if the traffic stop of the car he was driving was legal, then the evidence seized as a result of that stop would likely be admissible and his motion fails. [Dkt. 37 at 2.]

An officer's subjective beliefs are largely irrelevant to the probable cause inquiry. *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011). Instead, the analysis rests on two factors. First, the Court must decide what facts the officer knew at the time he stopped the vehicle. *Id.* at 613. Second, the Court must decide whether a reasonable officer could conclude that those facts amounted to a violation of the law. *Id.*

With respect to the first component of the inquiry, the sole reason Deputy Simmons listed in his report for the traffic stop was that while "traveling . . . behind a blue Nissan Altima, bearing Utah license plates . . . [he] performed a BMV registration inquiry on the license plate, and received a return on a white 2002 Nissan." [Dkt. 37-1 at 1.] There is no evidence that Mr. Uribe committed any moving violation before Deputy Simmons initiated the stop of the Nissan. [Dkt. 40 at 1; Dkt. 37-1 at 1.] Nor is there any evidence that Deputy Simmons' registration inquiry revealed that the vehicle he was following was stolen. Rather, Deputy Simmons independently performed a registration inquiry on the vehicle's license plate, which reported a vehicle color that was inconsistent with the color of the vehicle Deputy Simmons was following. [Dkt. 37-1 at 1.] Deputy Simmons initiated a traffic stop to check for registration compliance based solely on the color discrepancy. [Dkt. 37-1 at 1.]

The Government attempts to bolster the factual knowledge of Deputy Simmons by arguing that Deputy Simmons "knew from his training and extensive experience that stolen cars are oftentimes painted different colors in an attempt to evade detection." [Dkt. 40 at 1-2.] This argument fails because the Government cites nothing to support its speculative assertion—not even an affidavit from the officer regarding his training or experience with stolen vehicles—and there is no basis for this argument in the officer's report. Further, there is no evidence that Deputy Simmons' registration inquiry alerted him that the vehicle may be stolen. Given the

complete absence of evidence, the Court finds no basis in the Government's argument. Instead, based on the evidence in the record, the Court can only conclude that Deputy Simmons stopped Mr. Uribe's vehicle solely because the color of that vehicle did not match the color of the vehicle listed on the registration inquiry.

As for the second component of the inquiry—whether a reasonable officer could conclude based on the facts known at the time of the stop that the facts amounted to a violation of the law—the Government maintains that Deputy Simmons could have stopped the vehicle because Indiana Code § 9-18-2-27(a)(1) makes it unlawful to operate a vehicle in Indiana with a registration number belonging to another vehicle.[2] [Dkt. 40 at 7.] The Government's *post hoc* rationalization for Deputy Simmons' stop does not make the stop lawful. Based on the evidence in the record, the inconsistent color of the car was the only reason supporting Deputy Simmons' stop. [Dkt. 37-1 at 1.] There is no evidence that Deputy Simmons believed it was not registered to a matching vehicle identification number, and the Government cannot attribute knowledge or motivation to Deputy Simmons that is not supported by the record.

Moreover, Indiana Code § 9-18-2-27(a)(1), which is the only law the Government contends may have been broken, applies to "vehicles required to be registered under this chapter." Ind. Code § 9-18-2-27(a). And "this chapter" of the Indiana Code only applies to vehicles owned by Indiana residents, which Mr. Uribe was not. Ind. Code § 9-18-2-1.

Finally, even if that law did apply, Indiana does not require an applicant for vehicle registration to list the color of the vehicle the applicant intends to register. Ind. Code § 9-18-2-16. Likewise, the Government makes no argument that any law in Utah or Indiana requires a registrant to update his registration if the owner changes the color of his car.

---

[2] The vehicle driven by Mr. Uribe was properly registered to a matching vehicle identification number, as later confirmed by Deputy Simmons during the same traffic stop. [Dkt. 37-1 at 1.]

For these reasons, the Court concludes that Deputy Simmons could not have reasonably believed that Indiana Code § 9-18-2-27(a)(1) had been violated when he stopped Mr. Uribe's vehicle. Therefore, the Court concludes that the officer lacked probable cause to stop the vehicle Mr. Uribe was driving.

### 2. Reasonable Suspicion

In further response to Mr. Uribe's challenge, that Government contends that the stop of Mr. Uribe was a legitimate investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Mr. Uribe disagrees.

The Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Under *Terry*, police may conduct a brief, investigatory traffic stop if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. *McDonald*, 453 F.3d at 960. Reasonable suspicion is something less than probable cause but more than a hunch. *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005). It requires "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004). A stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred. *McDonald*, 453 F.3d at 960. Courts must examine the totality of the circumstances known to the officer at the time the stop is made. *Johnson*, 383 F.3d at 543. With *Terry* stops relating to vehicles, the proximity of the vehicle to suspected criminal activity and the proximity to reported crime are two important factors to be considered in determining reasonable suspicion. *Id.* at 543.

Determining whether an officer had reasonable suspicion requires the Court to examine the totality of the circumstances known to the officer at the time the stop is made, accordingly, the foregoing analysis by the Court is relevant. Specifically, based on the evidence in the record and excluding the Government's *post hoc* rationalizations for the stop, for which it cites no evidence, the Court can only conclude that Deputy Simmons stopped Mr. Uribe's vehicle solely because the color of that vehicle did not match the color of the vehicle listed on the registration inquiry. There is no evidence that Deputy Simmons' registration inquiry revealed that the car Mr. Uribe was driving was stolen or that a crime had recently been committed in close proximity involving a similar vehicle.

Additionally, there is no evidence that Mr. Uribe had committed a crime or was about to commit a crime. As previously noted, Indiana Code § 9-18-2-27(a)(1)—the only statute the Government cites that Mr. Uribe could have been violating—only applies to the registration of vehicles owned by Indiana residents, which Mr. Uribe was not. Even if that law did apply, Indiana does not require an applicant for vehicle registration to list the color of the vehicle the applicant intends to register. Ind. Code § 9-18-2-16. Likewise, the Government makes no argument that any law in Utah or Indiana requires a registrant to update his registration if the owner changes the color of his car.

For these reasons, the Court determines that Deputy Simmons lacked a reasonable, articulable suspicion that Mr. Uribe had committed a crime or was about to commit a crime when he conducted the investigatory stop. Therefore, the stop was unlawful.[3]

**C. Exclusionary Rule**

Mr. Uribe asks the Court to suppress the illegal drugs found in his vehicle after the unlawful stop.

The exclusionary rule is a judicially created remedy that prohibits the government from introducing evidence of guilt at the defendant's trial that was obtained through violations of the Fourth Amendment. *United States v. Ienco*, 182 F.3d 517, 526 (7th Cir. 1999). Evidence obtained as a result of an illegal arrest is "fruit of the poisonous tree" and must be excluded unless the government can show that an exception applies. *United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000).

The Court has already held that Deputy Simmons lacked probable cause or reasonable suspicion to stop Mr. Uribe's vehicle. Since the Government has not argued that an exception to the exclusionary rule applies in these circumstances, and it is the Government's burden to do so, the Court concludes that the drugs discovered in Mr. Uribe's illegally detained vehicle must be suppressed.

---

[3] The Court notes that while no case in this Circuit appears to have directly addressed whether a person may be legally detained based on a color discrepancy of the vehicle they are driving, a New Hampshire state court concluded that an officer who stopped a car solely on the basis of a color discrepancy lacked a reasonable, articulable suspicion that the defendant was involved in any sort of criminal activity justifying a temporary investigative detention. *State v. O'Neill*, 2007 N.H. Super. Lexis 2, *8 (N.H. Super. Ct. 2007) (applying New Hampshire state law while relying on federal law for guidance). Specifically, *O'Neill* found that it could "not sanction traffic stops for those citizens who simply decide to paint their cars without some particularized suspicion of criminal wrongdoing such as, for example, the theft and subsequent repainting of a vehicle." *Id.* Therefore, *O'Neill* granted the defendant's motion to suppress. *Id.* at *15.

## IV. CONCLUSION

For the reasons detailed herein, the Court **GRANTS** Defendant Jesus Uribe's Motion to Suppress. [Dkt. 36.]

09/28/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
Barry.Glickman@usdoj.gov

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS, INC.
Mike.Donahoe@fd.org